IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| GEORGE K. YOUNG, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Civ. No. 07-00450 HG KSC |
| | ) | |
| STATE OF HAWAII and LINDA | ) | |
| LINGLE in her capacity as | ) | |
| Governor of the State of | ) | |
| Hawaii; MARK J. BENNETT in | ) | |
| his capacity as State | ) | |
| Attorney General; COUNTY OF | ) | |
| HAWAII, as a sub-agency of | ) | |
| the State of Hawaii and HARRY | ) | |
| KIM in his capacity as Mayor | ) | |
| of the County of Hawaii; and | ) | |
| the Hilo County Police | ) | |
| Department, as a sub-agency | ) | |
| of the County of Hawaii and | ) | |
| LAWRENCE K. MAHUNA in his | ) | |
| capacity as Chief of Police; | ) | |
| JOHN DOES 1-25; JANE DOES 1- | ) | |
| 25; CORPORATIONS 1-5, and DOE | ) | |
| ENTITIES 1-5, DOE NON-PROFIT | ) | |
| ENTITIES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTIONS
TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff George K. Young, Jr. sues pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 because his application for a license to carry a weapon was denied under the provisions of Hawaii Revised Statutes ("HRS") § 134-6.  Plaintiff challenges the constitutional validity of HRS §§ 134-6 and 134-9, asserting these statutes violate his rights guaranteed by Article I of the United States Constitution, and by the Second, Fifth, Ninth, and

1

Fourteenth Amendments.  Plaintiff seeks damages, and an order enjoining the enforcement of HRS §§ 134-6 and 134-9.  Defendants move for dismissal of Plaintiff's Complaint.

Plaintiff's claims against the State of Hawaii, the State Governor, and the State Attorney General are barred by the doctrine of sovereign immunity.  Plaintiff's claims against the Mayor of the County of Hawaii and the Chief of Police are dismissed as duplicative of the claims asserted against the municipality.  As to the claims against the County of Hawaii and the Hilo County Police Department, Plaintiff has no individual fundamental right to bear arms, and HRS §§ 134-6 and 134-9 are rationally related to a legitimate government interest in securing public safety.  The Court **GRANTS** Defendants' motions to dismiss Plaintiff's Complaint.

**PROCEDURAL HISTORY**

On August 24, 2007, Plaintiff filed his complaint. (Doc. 1.)

On September 14, 2007, the County of Hawaii Defendants filed a Motion to Dismiss Plaintiff's Complaint.  (Doc. 14.)

On September 24, 2007, the State of Hawaii Defendants filed a Motion to Dismiss Plaintiff's Complaint.  (Doc. 17.)

On October 29, 2007, Plaintiff filed an Opposition to the motions to dismiss.  (Doc. 23.)

On November 6, 2007, the County of Hawaii Defendants filed a reply.  (Doc. 25.)

On November 8, 2007, the State of Hawaii Defendants filed a

reply.  (Doc. 26.)

On November 9, 2007, the Court entered an Order indicating the matter would be decided without hearing pursuant to Local Rule 7.2(d).  (Doc. 27.)

## BACKGROUND

**A.   Factual Allegations Set Forth In The Complaint**

The facts in the Amended Complaint are taken as true when the Court considers a motion to dismiss pursuant to Fed. R. Civ. P., Rule 12(b)(6).

The Complaint alleges that Plaintiff George K. Young, Jr. applied on February 9 and March 5, 2007, for a permit to carry a firearm either concealed or unconcealed, pursuant to Hawaii Revised Statutes ("HRS") § 134-9(a) and (c).[1]  Plaintiff's stated

---

[1] HRS § 134-9 States:
§ 134-9 Licenses to carry.

(a) In an exceptional case, when an applicant shows reason to fear injury to the applicant's person or property, the chief of police of the appropriate county may grant a license to an applicant who is a citizen of the United States of the age of twenty-one years or more or to a duly accredited official representative of a foreign nation of the age of twenty-one years or more to carry a pistol or revolver and ammunition therefor concealed on the person within the county where the license is granted.  . . .  The chief of police of the appropriate county, or the chief's designated representative, shall perform an inquiry on an applicant by using the National Instant Criminal Background Check System, to include a check of the Immigration and Customs Enforcement databases where the applicant is not a citizen of the United States, before any determination to grant a license is made. Unless renewed, the license shall expire one year from the date of issue.

(c) No person shall carry concealed or unconcealed on the person a pistol or revolver without being licensed to do so under this section or in compliance with sections 134-5(c) or 134-E.

purpose for wanting to carry a firearm was for "personal security, self-preservation and defense, and protection of personal family members and property."  According to the Complaint, Plaintiff's application was denied each time by Hilo County Police Department, Chief of Police Lawrence K. Mahuna stating that a permit will be issued pursuant to HRS § 134-9 ". . . only in exceptional cases or a demonstrated urgency . . ." (Compl. at 15-16, Doc. 1.)

**B.   Legal Allegations Set Forth In The Complaint**

The Complaint alleges that HRS Chapter 134 "offends Plaintiff's constitutional sensibilities and openly denies Plaintiff's free exercise to carry a firearm for any lawful purpose and such impediments are found to be **repugnant and offensive** to the United States Constitution . . . ."  (Id.)  The Complaint further alleges that HRS § 134-9 "provides wrongful legislative delegation of the unconstitutional . . . **discretionary authority** over an **individual, federally protected constitutional Right** . . . ."  (Id.)  The Complaint sets out claims asserting HRS §§ 134-6[2] and 134-9 violate Plaintiff's rights guaranteed by Article I of the United States Constitution, and by the Second, Fifth, Ninth, and Fourteenth Amendments. Counts One through Five allege the following claims:

---

[2]HRS § 134-6, which criminalized the carrying or use of firearms in certain circumstances, was replaced by HRS §§ 134-21 through 134-27 (2006).  <u>See</u> Act 66, § 6, of the 2006 Haw. Sess. Laws.

**COUNT ONE** - "(42 U.S.C. 1983, 1985, 1986) Violation of U.S. Constitution, Article I, Section 10, Cls. 1: 'No State shall . . . pass . . . any Bill of Attainder. . .'"

**COUNT TWO** - "(42 U.S.C. 1983, 1985, 1986) Violation of U.S. Constitution, Article I, Section 10: 'No State shall . . . pass any. . .law impairing the Obligation of Contract. . .'"

**COUNT THREE** - "Violation of U.S. Constitution, Amendment II"

**COUNT FOUR** - "Violation of U.S. Constitution, Amendment IX"

**COUNT FIVE** - "Violation of U.S. Constitution, Amendment XIV '. . .No State shall make or enforce any law which shall abridge the privileges and immunities of <u>citizens of the United States</u> . . . "

The Complaint also sets out claims of violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution, (Compl. at 6-11, 221-22, 31); the due process clause of the Fourteenth Amendment, (Compl. at 6 and 31-32); and the due process clause of the Fifth Amendment, (Id.). The Complaint requests a permanent injunction preventing the enforcement of HRS 134-6 and 134-9, damages, and punitive damages.

## STANDARD OF REVIEW

The Court may dismiss a complaint as a matter of law pursuant to Fed.R.Civ.P. Rule 12(b)(6) where it fails "to state a claim upon which relief can be granted."  Rule 8(a)(2) of the Fed.R.Civ.P. requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  <u>Conley v. Gibson</u>, 355 U.S.

41, 47 (1957); <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that recovery is very remote and unlikely"); <u>Kimes v. Stone</u>, 84 F.3d 1121, 1129 (9th Cir. 1996)("[a]ll that is required is that the complaint gives 'the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'" ) (<u>quoting</u> <u>Datagate, Inc. v. Hewlett-Packard Co.</u>, 941 F.2d 864, 870 (9th Cir. 1991)).

While the Court's review is generally limited to the contents of the complaint, the Court may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001)("Review is limited to the contents of the complaint"); <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003)(the courts may consider certain materials without converting the motion to dismiss into a motion for summary judgment); <u>Branch v. Tunnell</u>, 14 F.3d 449, 453-54 (9th Cir. 1994)(documents whose contents are alleged in a complaint and whose authenticity is not questioned by any party may also be considered).

In evaluating a complaint when considering a Fed.R.Civ.P. Rule 12(b)(6) motion to dismiss, the Court must presume all factual allegations of material fact to be true and draw all reasonable inferences in favor of the non-moving party.   <u>Roe v.</u>

City of San Diego, 356 F.3d 1108, 1111–12 (9th Cir. 2004);
Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998); Scheuer v.
Rhodes, 416 U.S. 232, 236 (1974) (the complaint must be liberally
construed, giving the plaintiff the benefit of all proper
inferences).

Conclusory allegations of law and unwarranted inferences,
though, are insufficient to defeat a motion to dismiss.  Pareto,
139 F.3d at 699; In re VeriFone Securities Litigation, 11 F.3d
865, 868 (9th Cir. 1993) (conclusory allegations and unwarranted
inferences are insufficient to defeat a motion to dismiss for
failure to state a claim); Western Mining Council v. Watt, 643
F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981) (the
Court does not "necessarily assume the truth of legal conclusions
merely because they are cast in the form of factual
allegations").  Additionally, the Court need not accept as true
allegations that contradict matters properly subject to judicial
notice or allegations contradicting the exhibits attached to the
complaint.  Sprewell, 266 F.3d at 988.

In Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007), the
United States Supreme Court recently addressed the pleading
standards under the Federal Rules of Civil Procedure in the anti-
trust context.  Numerous federal courts have considered Twombly's
effect on the federal pleading standard, namely whether Twombly
established a blanket heightened pleading standard for all cases.
The Court agrees with those courts that have held it does not.

A few weeks after <u>Twombly</u>, the Supreme Court decided <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007).  In <u>Erickson</u>, a prisoner civil rights case, the Court reiterated that Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."

The Ninth Circuit Court of Appeals in <u>Skaff v. Meridien North America Beverly Hills, LLC</u>, 506 F.3d 832 (9th Cir. 2007) applied <u>Erickson</u> in the Americans with Disabilities Act context, and reaffirmed the applicability of Rule 8's fair notice pleading standard.  The Ninth Circuit clarified that Rule 8's fair notice pleading standard, as opposed to a heightened pleading standard, applies unless there is an explicit requirement in a statute or federal rule.  <u>Id.</u> at 840-41 ("[T]he Supreme Court has repeatedly instructed us not to impose such heightened standards in the absence of an explicit requirement in a statute or federal rule.") (<u>citing</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 515 (2002) (rejecting heightened pleading standard for Title VII employment discrimination suits); <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 164, (1993) (rejecting heightened pleading standard for § 1983 suits asserting municipal liability); <u>see</u> <u>Bell Atl. Corp. v. Twombly</u>, ---U.S. ----, 127 S.Ct. 1955, 1973 n. 14, (2007); <u>cf</u>. Private Securities Litigation Reform Act of 1995, Pub.L. No. 104-67, § 101(b), 109 Stat. 737, 747 (imposing heightened pleading standard

for securities fraud class actions) (codified at 15 U.S.C. §

78u-4(b)(1)-(2)); Fed.R.Civ.P. 9(b) (imposing heightened pleading

standard for complaints of fraud or mistake)).

In the Ninth Circuit, a heightened pleading standard does

not apply in a Section 1983 case against a municipality.[3]

Rather, "a claim of municipal liability under section 1983 is

sufficient to withstand a motion to dismiss 'even if the claim is

based on nothing more than a bare allegation that the individual

officers' conduct conformed to official policy, custom, or

practice.'" Lee v. City of Los Angeles, 250 F.3d 668, 682-83

(9th Cir. 2001) (quoting Karim-Panahi v. Los Angeles Police

Dep't, 839 F.2d 621, 624 (9th Cir. 1988)).

_____

[3] Section 1983 of Title 42 of the United States Code
states:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory
> or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation
> of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress . . .

42 U.S.C. § 1983.

"Section 1983 does not create any substantive rights; rather
it is a vehicle whereby plaintiffs can challenge actions by
governmental officials." Cholla Ready Mix, Inc. v. Civish, 382
F.3d 969, 978 (9th Cir. 2004). To state a Section 1983 claim, a
"plaintiff must demonstrate a deprivation of a right secured by
the Constitution or laws of the United States, and that the
defendant acted under color of state law." Kirtley v. Rianey,
326 F.3d 1088, 1092 (9th Cir. 2003).

## ANALYSIS

I. **PLAINTIFF'S FEDERAL CONSTITUTIONAL CLAIMS AGAINST THE STATE OF HAWAII DEFENDANTS ARE BARRED BY ELEVENTH AMENDMENT IMMUNITY**

Plaintiff sues the State of Hawaii, Linda Lingle in her capacity as the Governor of Hawaii, and Mark J. Bennett in his capacity as the Attorney General of Hawaii.

The doctrine of sovereign immunity applies when civil rights claims are brought against the State of Hawaii.  The State of Hawaii has not waived its Eleventh Amendment immunity, and Congress did not abrogate the States' sovereign immunity when enacting 42 U.S.C. § 1983.  Plaintiff's claims against the State of Hawaii and against Linda Lingle and Mark J. Bennett in their official capacities under 42 U.S.C. § 1983, 1985, and 1986 for violation of the Supremacy Clause of the United States Constitution, and the Second, Fifth, Ninth, and Fourteenth Amendments are barred by Eleventh Amendment Immunity.

### A.   The Doctrine of Sovereign Immunity

The doctrine of sovereign immunity is set out in the Eleventh Amendment of the United States Constitution:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.  The United States Supreme Court has held that Eleventh Amendment immunity extends to suits against a State or its agencies by citizens of that same State.  Hans v.

<u>Louisiana</u>, 134 U.S. 1 (1890).  Sovereign immunity generally bars the federal courts from entertaining suits brought against a state or its agencies absent a State's consent or Congressional abrogation.  <u>Los Angeles County Bar Ass'n v. Eu</u>, 979 F.2d 697, 704 (9th Cir. 1992); <u>Wilbur v. Locke</u>, 423 F.3d 1101, 1111 (9th Cir. 2005), <u>cert. denied</u> __ U.S. __, 126 S. Ct. 1338 (2006).

Absent a waiver or abrogation of immunity, federal statutory and constitutional claims for money damages are barred against state officials sued in their official capacities.  <u>See</u> <u>Dittman v. State of California</u>, 191 F.3d 1020, 1025-26 (9th Cir. 1999).

**B.   Hawaii Has Not Waived Sovereign Immunity**

In order to waive sovereign immunity, a State's consent must be expressed unequivocally.  <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 99 (1984).  The State of Hawaii has not waived its sovereign immunity from suit in federal court for civil rights actions.  Here, the State of Hawaii Defendants have invoked the doctrine of sovereign immunity.

**C.   42 U.S.C. §§ 1983, 1985, And 1986 Do Not Abrogate Sovereign Immunity**

Congress has the power to abrogate the sovereign immunity of the States, pursuant to Section 5 of Amendment XIV of the United States Constitution: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."  Congress must do so by enacting a statute which "explicitly and by clear language indicate[s] on its face an intent to sweep away

the immunity of the States." <u>Quern v. Jordon</u>, 440 U.S. 332, 332

(1979); <u>Kimel v. Florida Board of Regents</u>, 528 U.S. 62, 73

(2000)(Congress may abrogate the States' constitutionally secured

immunity from suit in federal court only by making its intention

unmistakably clear in the language of the statute).

As stated by the United States Supreme Court in <u>Will</u>,

Congress did not abrogate the States' Eleventh Amendment immunity

when enacting 42 U.S.C. § 1983:

> Section 1983 provides a federal forum to remedy many
> deprivations of civil liberties, but it does not
> provide a federal forum for litigants who seek a remedy
> against a State for alleged deprivations of civil
> liberties. . . .

<u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, at 65-66

(1989).  The State of Hawaii is not a "person" for purposes of

liability under Section 1983.  <u>Will</u>, 491 U.S. at 71.  A state

official acting in her official capacity, except where sued for

prospective injunctive relief, is also not a "person" for

purposes of liability under Section 1983.  <u>Id.</u>; <u>Sherez v. Staate</u>

<u>of Hawaii Department of Education</u>, 396 F.Supp.2d 1138, 1142-43

(D. Haw. 2005) (dismissing claims against the Department of

Education and against state official in official capacity on

Eleventh Amendment Immunity grounds).

Neither did Congress abrogate the States' Eleventh Amendment

immunity when enacting 42 U.S.C. §§ 1985 and 1986.

The State of Hawaii has not waived sovereign immunity, and

Congress, in passing 42 U.S.C. §§ 1983, 1985, and 1986, did not

abrogate Eleventh Amendment immunity of state governments.  The
Court lacks jurisdiction over all of Plaintiff's federal
constitutional claims against the State of Hawaii, and over
Plaintiff's claims for money damages against the Governor of
Hawaii and the Attorney General of Hawaii.  The claims are
**DISMISSED**.

### D.   Plaintiff's Claims Against The Governor Of Hawaii and The Attorney General Of Hawaii In Their Official Capacities

Plaintiff may bring claims under Sections 1983, 1985, and
1986 for prospective injunctive relief against the Governor of
Hawaii and the State Attorney General in their official
capacities.  Under the doctrine established in Ex parte Young,
209 U.S. 123 (1908), the Eleventh Amendment does not bar a suit
"for prospective declaratory and injunctive relief against state
officers, sued in their official capacities, to enjoin an alleged
ongoing violation of federal law."  Wilbur, 423 F.3d at 1111
(quoting Aqua Caliente Band of Cahuilla Indians v. Hardin, 223
F.3d 1041, 1045 (9th Cir. 2000)).  This is because "official-
capacity actions for prospective relief are not treated as
actions against the State."  Will, 491 U.S. at 71 n.10.

In determining "whether the doctrine of Ex Parte Young
avoids an Eleventh Amendment bar to suit, a court need only
conduct a straightforward inquiry into whether [the] complaint
alleges an ongoing violation of federal law and seeks relief
properly characterized as prospective."  Verizon Md., Inc. v.

Public Serv. Comm'n of Md., et al., 535 U.S. 635, 645 (2002);
ACS of Fairbanks, Inc. v. GCI Communication Corp., 321 F.3d 1215,
1216-17 (9th Cir. 2003).   A plaintiff may not seek a "retroactive
award which requires the payment of funds from the state
treasury."   Foulks v. Ohio Dep't of Rehabilitation and
Correction, 713 F.2d 1229, 1232 (6th Cir. 1983) (citing Edelman
v. Jordan, 415 U.S. 651 (1974)).

The Court looks to Plaintiff's Complaint to determine the
type of relief sought.   While Plaintiff requests an injunction
against the enforcement of HRS Chapter 134, he is actually
challenging the constitutional validity of HRS §§ 134-6 and 134-
9.   Plaintiff argues that because the Second Amendment guarantees
the fundamental individual right to bear arms, enforcement of HRS
Chapter 134 is unconstitutional.   As discussed below, HRS 134-6
and 134-9 are constitutional, and enforcement of these statutes
are not in violation of Plaintiff's civil rights.

Moreover, the Complaint fails to allege a "nexus between the
violation of federal law and the individual accused of violating
that law."   Pennington Seed, Inc. v. Produce Exchange No. 299,
457 F.3d 1334, 1342 (C.A.Fed. 2006); Frew v. Hawkins, 540 U.S.
431, 437 (2004).   "[This] requires more than simply a broad
general obligation to prevent a violation; it requires an actual
violation of federal law by that individual."   Id.

Plaintiff asserts that the individual State Defendants have
general oversight of the laws of the State of Hawaii.   In naming

Governor Linda Lingle as a Defendant in her official capacity, the Complaint alleges that the Governor is responsible for the oversight of the laws enacted in the State of Hawaii.  (Compl. at 2, Doc. 1.)  In naming Attorney General Mark J. Bennett, the Complaint alleges that the Attorney General is responsible for advising the Hawaii State Legislature on the constitutionality of the laws of the State.  (Compl. at 3, Doc. 1.)  Allegations of general oversight of State laws are insufficient to establish the required nexus between the State officials, the Governor and the Attorney General, and the alleged violation of Plaintiff's civil rights through the enforcement of HRS Chapter 134.  A state official's connection to the enforcement of the statutes "must be fairly direct, a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit."  Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 1992).

The Court lacks jurisdiction over Plaintiff's claims against the Governor of Hawaii, and the State Attorney General of Hawaii, and the claims against the individual State Defendants are **DISMISSED**.

## II.  PLAINTIFF'S FEDERAL CONSTITUTIONAL CLAIMS AGAINST THE COUNTY OF HAWAII, THE HAWAII COUNTY POLICE DEPARTMENT, AND HARRY KIM AND LAWRENCE K. MAHUNA IN THEIR OFFICIAL CAPACITIES

Plaintiff sues the County of Hawaii, Harry Kim in his capacity as Mayor of the County of Hawaii, the Hilo County Police

Department, and Lawrence K. Mahuna in his capacity as Chief of Police.  All of the individuals named are sued in their official capacities only.

### A.   Plaintiff's Claims Against Defendants Harry Kim and Lawrence K. Mahuna in Their Official Capacities Are Dismissed as Duplicative of the Claims Against the County of Hawaii

Defendants argue that Plaintiff's claims against Defendants Harry Kim, in his official capacity as Mayor of Hawaii, and Lawrence K. Mahuna, in his official capacity as Chief of Police of the County Of Hawaii Police Department, should be dismissed on the grounds that they are duplicative of the claims against the County of Hawaii.

"[I]t is well-settled that '[t]here is no longer a need to bring official-capacity actions against local government officials, for under Monell [v. Dept. of Social Services, 436 U.S. 658, 690 n. 55 (1978)] ... local government units can be sued directly for damages and injunctive or declaratory relief.'" Wong v. City & County of Honolulu, 333 F.Supp.2d 942, 947 (D. Haw. 2004)(citing Kentucky v. Graham, 473 U.S. 159, 166-67 n. 14); Carnell v. Grimm, 872 F.Supp. 746, 752 (D. Haw. 1994) (same).

The claims asserted against Defendants Harry Kim and Lawrence K. Mahuna in their official capacities duplicate the claims asserted against the County of Hawaii.  Plaintiff's claims against Defendants Harry Kim, Mayor of the County of Hawaii, and

16

Lawrence K. Mahuna, Chief of Police, are **DISMISSED**.

    **B.   Defendant Hawaii County Police Department Is Treated As Part Of The Municipality Of The County Of Hawaii**

    Defendants argue that Plaintiff's claims against Defendant Hawaii County Police Department should be dismissed on the grounds that the Hawaii County Police Department is not considered a separate legal entity from the County of Hawaii.

    Claims against a municipality and its respective police department are treated as claims against the municipality.  See Pourny v. Maui Police Department, County of Maui, 127 F.Supp.2d 1129, 1143 (D.Haw. 2000) (treating the Maui Police Department and the County of Maui as one party); Tokuhama v. City and County of Honolulu, et al., 751 F.Supp. 1385, 1387-88, 1391-94 (D.Haw. 1989) (reviewing the City and County of Honolulu's liability under § 1983 for the alleged unconstitutionality of HPD's policies and customs); see also Headwaters Forest Defense v. County of Humboldt, et al., 276 F.3d 1125, 1127 (9th Cir. 2002) (treating police departments as part of their respective county or city).  In the Ninth Circuit, where a complaint is brought against a municipality, the complaint may also be brought against the respective police department as part of the municipality. Hoe III v. City and County of Honolulu et al., 2007 WL 1118288, at *5 (D. Haw. 2007) ("in this jurisdiction, where a complaint is brought against a municipality, such as the City and County of Honolulu, it also may be brought against their respective police

departments as part of the municipality".)  Different departments within the County are not considered separate legal entities.

Here, Defendants Hawaii County Police Department and the County of Hawaii are treated as one party, and Plaintiff's claims are analyzed under the applicable standard for municipal liability under § 1983.

### C.   Municipal Liability Under § 1983

Plaintiff's federal constitutional claims against Defendants Hawaii County Police Department and County of Hawaii ("County Defendants") are based on § 1983.

§ 1983 of Title 42 of the United States Code states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.

"Section 1983 does not create any substantive rights; rather it is a vehicle whereby plaintiffs can challenge actions by governmental officials." Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 978 (9th Cir. 2004).  To state a cause of action under § 1983, a "plaintiff must demonstrate a deprivation of a right secured by the Constitution or laws of the United States, and that the defendant acted under color of state law." Kirtley v. Rianey, 326 F.3d 1088, 1092 (9th Cir. 2003); Leer v. Murphy, 844

18

F.2d 628, 632 (9th Cir. 1988).

A municipality may be liable in a Section 1983 action under two theories.  Generally, the municipality's alleged unconstitutional acts must implement or execute a "'policy' or 'custom' that caused the plaintiff's injury.'"  McDonald v. City of Sunnyside, 2007 WL 1223451, at *2 (E.D. Wash. April 23, 2007) (citing Bd. of County Comm'rs of Bryan County, OK v. Brown, 520 U.S. 397, 403 (1997)).  "The official policy requirement is intended to distinguish acts of the municipality from acts of employees of the municipality so that municipal liability is limited to actions for which the municipality is actually responsible."  Gausvik v. Perez, 239 F.Supp. 2d 1047, 1053 (E.D. Wash. 2002) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80 (1986)).  The acts complained of must reflect "practices of . . . officials permanent and well-settled as to constitute a 'custom or usage' with the force of law."  Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691 (1978). "In "custom" cases, liability is attributed through a policy maker's actual or constructive knowledge of and acquiescence in the unconstitutional custom or practice."  Gausvik, 239 F.Supp. 2d at 1053 (citing McNabola v. Chicago Transit Auth., 10 F.3d 501, 511 (7th Cir. 1993)).

A municipality can also be held liable under Section 1983 for failure to train, supervise, or discipline its employees. Gausvik, 239 F.Supp. 2d at 1053.

19

###### D.    Plaintiff Fails To State A Federal Constitutional Claim Against The County Defendants Under Section 1983

It is not disputed that County Defendants acted under color of state law.  Plaintiff's claims against County Defendants are that the municipality has a policy of enforcing H.R.S. §§ 134-6 and 134-9, resulting in the alleged deprivation of Plaintiff's civil rights under Article I of the United States Constitution, and the Second, Fifth, Ninth, and Fourteenth Amendments.

Defendants seek dismissal of Plaintiff's Section 1983 claims on the grounds that Plaintiff has failed to sufficiently allege deprivation of a constitutional right.

###### 1.    Plaintiff Lacks Standing To Challenge HRS Chapter 134 On The Basis Of An Alleged Deprivation Of 2nd Amendment Rights

Plaintiff challenges HRS Chapter 134 as being in violation primarily of the Second Amendment to the United States Constitution.  The Second Amendment provides:

> A well regulated Militia, being necessary to the
> security of a free State, the right of the people to
> keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

Plaintiff asserts the view that the Second Amendment grants a right to the people, not to the States.  He argues that the Second Amendment limits the actions of the States in addition to those of Congress, enshrining the right to bear arms for the defense of the individual and their family, as well as to assist in the common defense through a well-regulated militia.

The Court is under an independent duty to examine the standing of the Plaintiff.  FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) ("federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'") (quoting Allen v. Wright, 468 U.S. 737, 750 (1984)) (alteration in original).

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' or 'controversies.'"  Allen v. Wright, 468 U.S. 737, 750 (1984)(This limitation "defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded.").  The "doctrine that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important."  Id.  Article III standing is a jurisdictional prerequisite.  See id. at 754.

Plaintiff has the burden to establish his standing to sue. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-61 (1992). Standing includes both constitutional and jurisprudential considerations.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Plaintiff establishes standing by satisfying three elements which constitute the "irreducible constitutional minimum" of Article III standing.  Id.  Article III of the United States Constitution requires first that the plaintiff must have suffered injury to a legally protected interest.  Id. Plaintiff must then show that the can be traced to some wrongful

21

or illegal conduct by the County Defendants, and that the injury is likely to be redressed by a favorable decision.  Id.; Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982).

Plaintiff's case concerns the first element of constitutional standing, that is whether Plaintiff has suffered an injury to a civil right protected by the Second Amendment.

The United States Supreme Court has held that the Second Amendment constrains only the actions of Congress, not the States.  In United States v. Cruikshank, 92 U.S. 542, 553 (1876), the Supreme Court stated:

> The second amendment declares that [the right to bear arms] shall not be infringed; but this ... means no more than that it shall not be infringed by Congress. This is one of the amendments that has no other effect than to restrict the powers of the national government....

See also Presser v. Illinois, 116 U.S. 252, 264-65 (1886) (same). In United States v. Miller, 307 U.S. 174, 178 (1939), the Supreme Court stated:

> In the absence of any evidence tending to show that the possession or use of a 'shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or efficiency of a well-regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument.

The United States Supreme Court's decisions in Cruikshank, Presser, and Miller make clear that the Second Amendment binds only the national government.  The Ninth Circuit precedent is consistent with the decisions of the United States Supreme Court.

22

See <u>Hickman v. Block</u>, 81 F.3d 98, 101-102 (9th Cir. 1996), <u>cert.</u> <u>denied</u>, 519 U.S. 912 (1996) (<u>quoting</u> <u>United States v. Miller</u>, 307 U.S. 174, 178 (1939)); and <u>Silveira v. Locker</u>, 312 F.3d 1052, 1066-1067 (9th Cir. 2002)("Our court . . . has interpreted <u>Miller</u> as rejecting the traditional individual rights view. "), <u>petition</u> <u>for rehearing en banc denied</u>, 328 F.3d 567 (9th Cir. 2003).

The Fifth Circuit Court of Appeals in <u>United States v.</u> <u>Emerson</u>, 270 F.3d 203 (5th Cir. 2001), has interpreted the United States Supreme Court's decisions in <u>Cruikshank</u>, <u>Presser</u>, and <u>Miller</u> differently.  The holding in <u>Emerson</u> is contrary to the precedents established in the Ninth Circuit in the cases of <u>Hickman</u> and <u>Silveira</u>.

In <u>Hickman</u>, the Ninth Circuit Court of Appeals decided a case involving a lawsuit against law enforcement officials in California who refused to issue a concealed weapons permit to a private individual.  The Ninth Circuit Court held:

> We follow our sister circuits in holding that the
> Second Amendment is a right held by the states, and
> does not protect the possession of a weapon by a
> private citizen.   [I]t is only in furtherance of state
> security that "the right of the people to keep and bear
> arms" is finally proclaimed.
>
> Following <u>Miller</u>, "[i]t is clear that the Second
> Amendment guarantees a collective rather than an
> individual right" ... Because the Second Amendment
> guarantees the right of the states to maintain armed
> militia, the states alone stand in the position to show
> legal injury when this right is infringed.

<u>Hickman</u>, 81 F.3d at 101-102 (citations and footnote omitted).

The holding in <u>Hickman</u> is that the Second Amendment is a

right held by the States, and does not protect the possession of a weapon by a private citizen.  The holding was again affirmed by the Ninth Circuit Court of Appeals in the case of <u>Silveira</u>. There, the Court stated:

> The amendment protects the people's right to maintain an effective state militia, and does not establish an individual right to own or possess firearms for personal or other use....

<u>Id.</u> at 1066-1067 (footnotes omitted).  The Second Amendment limits only federal action.  <u>Fresno Rifle and Pistol Club, Inc.</u> <u>v. Van de Kamp</u>, 746 F.Supp. 1415, 1419 (E.D.Cal. 1990)("the Second Amendment stays the hand of the National Government only").

H.R.S. §§ 134-6 and 134-9 do not violate Plaintiff's Second Amendment rights.  Plaintiff does not have standing to challenge H.R.S Chapter 134 on the basis of an alleged deprivation of a Second Amendment right.  Plaintiff has failed to show "injury" because the right to bear arms is a right held by the states alone.  <u>Silveira</u>, 312 F.3d at 1066-1067 ("Because we hold that the Second Amendment does not provide an individual right to own or possess guns or other firearms, plaintiffs lack standing . . . ").  The Court has no jurisdiction to hear the matter. Plaintiff's claims alleging a violation of his Second Amendment right, Count Three, does not state a cause of action.

> **2.    Plaintiff Lacks Standing To Challenge HRS Chapter 134 On The Basis Of An Alleged Deprivation Of 9th Amendment Rights**

The Ninth Amendment provides that:

24

> The enumeration in the Constitution of certain rights
> shall not be construed to deny or disparage others
> retained by the people.

U.S. Const. amend. IX.

The Ninth Circuit Court of Appeals has held that the Ninth Amendment does not guarantee an individual right to bear arms:

> We join our sister circuits in holding that the Ninth
> Amendment does not encompass an unenumerated,
> fundamental, individual right to bear firearms.

San Diego County Gun Rights Committee v. Reno, 98 F.3d 1121, 1125 (9th Cir. 1996) (citations omitted).

Plaintiff does not have standing to challenge HRS Chapter 134 on the basis of an alleged deprivation of Ninth Amendment rights.  Plaintiff's claims alleging a violation of his Ninth Amendment rights, Count Four, do not state a cause of action.

### 3.  Plaintiff's 14th Amendment Claims

#### a.  Plaintiff's Equal Protection Claim Under The 14th Amendment Is Without Merit

While Plaintiff's Complaint could be more explicit, it appears he is alleging a Fourteenth Amendment equal protection claim.  Plaintiff asserts that because he has the fundamental individual right to bear arms, and he considers this right to have been recognized by the Fifth Circuit Court[4], his civil right

---

[4]United States v. Emerson, 270 F.3d 203, 260 (5th Cir. 2001)("We find that . . . the Second Amendment . . . protects individual Americans in their right to keep and bear arms whether or not they are a member of a select militia or performing active military service or training. . . . We hold, consistent with Miller, that [the Second Amendment] protects the right of individuals, including those not then actually a member of any militia or engaged in active military service or training, to

to equal protection guaranteed by the Fourteenth Amendment has
been violated by the enforcement of HRS Chapter 134, and by the
Ninth Circuit Court of Appeal's holding that there is no
fundamental individual right to bear arms.

The Equal Protection Clause of the Fourteenth Amendment
commands that no State shall "deny to any person within its
jurisdiction the equal protection of the laws." Plyler v. Doe,
457 U.S. 202, 216 (1982).

As discussed above, the Ninth Circuit Court of Appeals has
held that the Second Amendment does not confer on individual
citizens a fundamental right to bear arms, and that a statute
restricting firearm possession does not burden the exercise of a
fundamental right. United States v. Hancock, 231 F.3d 557,
565-566 (9th Cir. 2000). A challenge, under an equal protection
claim, to a statute affecting a non-fundamental right is reviewed
under the rational basis standard. Id.

Applying the rational basis standard, "we presume
legislation is valid and will sustain it if the classification
drawn by the statute is rationally related to a legitimate
[governmental] interest." City of Cleburne v. Cleburne Living
Ctr., Inc., 473 U.S. 432, 440(1985)), cert. denied, 519 U.S. 1149
(1997).

Plaintiff has the burden of proving that the classification

───────────────────

privately possess and bear their own firearms . . . that are
suitable as personal, individual weapons . . . .").

is wholly arbitrary and irrational, see id., "and that it cannot conceivably further a legitimate governmental interest." United States v. Phelps, 17 F.3d 1334, 1345 (10th Cir.), cert. denied, 513 U.S. 844 (1994).

Here, the statutes comprising HRS Chapter 134 are rationally related to the legitimate government interest in public welfare and safety. Complying with the requirements of H.R.S. § 134-6, before Plaintiff is issued a license to carry a gun on his person, is rationally related to the legitimate government interest in public welfare and safety. The Hawaii Supreme Court, in the case of State v. Mendoza, held that the requirements of HRS Chapter 134 bear a rational relationship to a legitimate government interest, stating:

> We believe that requiring a person to obtain a permit under HRS § 134-2 prior to acquiring a firearm is rationally related to the legitimate government interest of ensuring that only those who are mature, law abiding, competent citizens possess firearms.

State v. Mendoza, 82 Hawai'i 143, 154, 920 P.2d 357, 368 (1996).

The United States Supreme Court, in the case of Robertson v. Baldwin, recognized that the Second Amendment right to keep and bear arms is not infringed by laws prohibiting the carrying of concealed weapons. Robertson v. Baldwin 165 U.S. 275, 281-82 (1897)("the right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting the carrying of concealed weapons").

Plaintiff's equal protection claim under the Fourteenth

27

Amendment is without merit.

> **b.    HRS Chapter 134 Does Not Violate the Privileges or Immunities Clause of the Fourteenth Amendment**

In Count Five of the Complaint, Plaintiff asserts the claim that the enforcement of HRS Chapter 134 violates the privileges and immunities clause of the Fourteenth Amendment to the United States Constitution.

Article IV, Sec. 2, of the Constitution provides that "the Citizens of each state shall be entitled to all Privileges and Immunities in the several States".  The Supreme Court has held it is "only with respect to those 'privileges and immunities' bearing on the vitality of the Nation as a single entity that a State must accord residents and non residents equal treatment"; Supreme Court of New Hampshire v. Piper, 470 U.S. 274, 279 (1985).  The Complaint must set forth facts showing interference with a right of national citizenship in order to state a claim for violation of the privileges and immunities clause.  Russell v. Huq, 275 F.3d 812, 821-22 (9th Cir. 2002).  The Complaint must allege that Plaintiff has been treated differently from other residents of Hawaii on such a ground.  "Discrimination on the basis of out-of-state residency is a necessary element for a claim under the Privileges and Immunities Clause." Giannini v. Real, 911 F.2d 354, 357 (9th Cir. 1990) (citation omitted).  Cf. Paciulan v. George, 229 F.3d 1226, 1229 (9th Cir. 2000)(rejecting a Privileges or Immunities argument in a case in which

plaintiffs, who were residents of California, were treated no differently from any other residents of California).

Plaintiff asserts that HRS Chapter 134 interferes with a right of national citizenship because it restricts the right to carry firearms.  Plaintiff's claim is without merit.  There is no fundamental individual right to bear arms.  See Hickman, 81 F.3d at 101-102; Silveira, 312 F.3d at 1066-1067.  The alleged individual right to bear arms is not a right of national citizenship.  Neither does the Complaint allege that Plaintiff, a resident of Hawaii, was treated differently from other Hawaii residents.  The absence of an impermissible interference with a right of national citizenship is fatal to Plaintiff's claim, in Count Five, of a violation of the privileges and immunities clause.

> **c.  The Complaint Fails To State A Claim For Violation Of The 14th Amendment Due Process Clause**

Plaintiff contends that the enforcement of HRS § 134-6 and 134-9 violates Plaintiff's individual right to carry a gun and his right to due process under the Fourteenth Amendment of the United States Constitution.

The Fourteenth Amendment protects against the deprivation of property or liberty without due process.  See Carey v. Piphus, 435 U.S. 247, 259 (1978); Brady v. Gebbie, 859 F.2d 1543, 1547 (9th Cir. 1988).

There are two steps in determining whether due process

rights have been violated by the actions of a government official.  First, it is determined whether a liberty or property interest exists entitling a plaintiff to due process protections. If a constitutionally protected interest is established, a three part balancing test is employed to determine what process is due. Hewitt v. Grabicki, 794 F.2d 1373, 1380 (9th Cir. 1986).

The Court decides the constitutionality of a statute, challenged on procedural due process grounds, only as it applies to the particular facts at hand.  Plaintiff must prove that HRS § 134-6 and 134-9 adversely affect a protected interest under the facts of the case.  "A procedural due process challenge to the validity of [a statute] cannot proceed in the abstract." Thalheim v. Greenwich, 256 Conn. 628, 648 (2001).  "A claim that a statute fails, on its face, to comport with the constitutional requirements of procedural due process reflects a fundamental misunderstanding of the law of due process.  Due process is inherently fact-bound because due process is flexible and calls for such procedural protections as the particular situation demands.... The constitutional requirement of procedural due process thus invokes a balancing process that cannot take place in a factual vacuum."  Sassone v. Lepore, 226 Conn. 773, 779, 629 A.2d 357 (1993).

The United States Supreme Court, in the case of Mathews v. Eldridge, set forth a three part balancing test for analysis of an individual's constitutional entitlement to a particular

judicial or administrative procedure.  First, the private
interest that will be affected by the official action.  Second,
the risk of an erroneous deprivation of such interest through the
procedures used, and the probable value, if any, of additional or
substitute procedural safeguards.  Third, the Government's
interest, including the function involved and the fiscal and
administrative burdens that the additional or substitute
procedural requirement would entail.  <u>Mathews v. Eldridge</u>, 424
U.S. 319, 335 (1976).

Here, Hawaii's statutory procedures for securing a license
to carry a weapon, as set forth in HRS Chapter 134, do not
implicate defendant's liberty or property interests as there is
no fundamental individual right to bear arms.  <u>See</u> <u>Hickman</u>, 81
F.3d at 101-102; <u>Silveira</u>, 312 F.3d at 1066-1067.  The State of
Hawaii has a legitimate interest in maintaining public safety
through the regulation of who can carry a weapon in the
community.  The statutes comprising HRS Chapter 134 are
rationally related to the governmental interest in the
community's safety.

The Complaint alleges Plaintiff did receive an
administrative review of his applications.  Plaintiff applied for
his permit twice, had the application reviewed, and was denied
for failure to state an exceptional need to carry a weapon.
Having no fundamental liberty interest in carrying a weapon,
Plaintiff was not subject to an unreasonable risk of erroneous

deprivation of his civil rights.   "The fundamental requisite of
due process of law is the opportunity to be heard [which] must be
at a meaningful time and in a meaningful manner...."   <u>Goldberg v.
Kelly</u>, 397 U.S. 254, 267-68 (1970) (citations and internal
quotation marks omitted).   The Complaint fails to state a claim
on which relief may be granted for violation of Plaintiff's due
process rights guaranteed by the Fourteenth Amendment, and
dismissal of the claim is warranted.

> **4.   The Due Process Clause Of The 5th Amendment Is
>         Inapplicable Where There Is No Federal Defendant**

Plaintiff claims his right to due process of law afforded
him by the Fifth Amendment of the United States Constitution was
violated when he was denied a concealed carry gun permit.

The Fifth Amendment due process clause incorporates the
principles of equal justice under the law, applicable to the
federal government, and prohibits the Federal Government from
engaging in discrimination that is "so unjustifiable as to be
violative of due process."   <u>Boiling v. Sharpe</u>, 347 U.S. 497, 499
(1954); <u>Lyng v. Castillo</u>, 477 U.S. 635, 636 n. 2 (1986).

There is no federal defendant in this case.   The Fifth
Amendment's Due Process Clause does not apply to the States and
is therefor inapplicable.   <u>See</u> <u>Castillo v. McFadden</u>, 399 F.3d
993, 1002 n. 5 (9th Cir. 2005)(noting that the Fifth Amendment's
Due Process Clause prohibits the federal government from
depriving persons of due process of law).

Even if Plaintiff's Fifth Amendment due process claim is

considered, the result is the same as the result reached under the Fourteenth Amendment due process analysis.   Plaintiff's right to due process has not been violated by the enforcement of HRS Chapter 134.

The applicable legal standards under the Fifth Amendment's equal protection component are the same as the legal standards under the Fourteenth Amendment equal protection clause. Schweiker v. Wilson, 450 U.S. 221, 226 n. 6 (1981) ("[T]he Fifth Amendment imposes on the Federal Government the same standard required of state legislation by the Equal Protection Clause of the Fourteenth Amendment.").

Here, the rational basis standard is appropriate because the Second Amendment does not guarantee a fundamental individual right to bear arms.   Lewis v. United States, 445 U.S. 55, 65 n. 8 (1980) ("These legislative restrictions on the use of firearms are neither based upon constitutionally suspect criteria, nor do they trench upon any constitutionally protected liberties.") (citing Miller, 307 U.S. at 178 (the Second Amendment does not guarantee the right to bear a firearm that does not have "some reasonable relationship to the preservation or efficiency of a well regulated militia")).

As stated above, the statutory law of HRS Chapter 134 is rationally related to the legitimate government interest in public welfare and safety.

Dismissal of Plaintiff's claims for violation of the due

33

process clause of the Fifth Amendment to the United States
Constitution is warranted.

>     **5.   HRS Chapter 134 Does Not Constitute a Bill of
>           Attainder in Violation of Article I, Section 10 Of
>           The United States Constitution**

Plaintiff asserts that HRS Chapter 134 constitutes an
unconstitutional bill of attainder under Article I, section 10,
clause 1 of the United States Constitution ("No State shall ...
pass any Bill of Attainder...."). Plaintiff asserts the statutes
of HRS Chapter 134 constitute an impermissible bill of attainder
because enforcement of the statutes results in the prejudgment of
Plaintiff as one guilty of abusing the right to carry a firearm
when Plaintiff's application is denied. (Compl. at 25, Doc. 1.)
The Court disagrees.

The "key features of a bill of attainder" are that the
challenged statute "legislatively determines guilt and inflicts
punishment upon an identifiable individual without provision of
the protections of a judicial trial." Nixon v. Administrator of
Gen. Servs., 433 U.S. 425, 468 (1977); United States v. Lovett,
328 U.S. 303, 315-316 (1946) ("[L]egislative acts, no matter what
their form, that apply either to named individuals or to easily
ascertainable members of a group in such a way as to inflict
punishment on them without a judicial trial are bills of
attainder prohibited by the Constitution.").

"Forbidden legislative punishment is not involved merely
because the Act imposes burdensome consequences." The inquiry is

34

whether the Hawaii Legislature "inflict[ed] punishment" within the meaning of the Bill of Attainder Clause upon citizens who wish to carry a weapon. <u>Nixon</u>, 433 U.S. at 472 (<u>quoting</u> <u>United States v. Lovett</u>, 328 U.S. 303, 315 (1946)).

A statutory law is not a bill of attainder merely because it regulates the conduct of designated individuals. "However expansive the prohibition against bills of attainder, it surely was not intended to serve as a variant of the equal protection doctrine, invalidating every Act of Congress or the States that legislatively burdens some persons or groups but not all other plausible individuals." <u>Nixon</u>, 433 U.S. at 471 (footnote omitted).

Here, the Hawaii Legislature's intent was to control when and where certain types of weapons are carried in the community. To carry out that intent, the law by necessity was directed at all individuals seeking to carry weapons. The law concerns the general public, not an identifiable discrete group of citizens.

There are three inquiries in determining whether a statute inflicts punishment that implicates the Bill of Attainder Clause: "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, "viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes"; and (3) whether the legislative record "evinces a[n] ... intent to punish." <u>Selective Serv. Sys. v. Minnesota Pub.</u>

Interest Research Group, 468 U.S. 841, 852 (1984) (statute
denying federal student aid to males who fail to register for
draft does not inflict punishment within meaning of Bill of
Attainder Clause) (quoting Nixon, 433 U.S. at 473 ).  Plaintiff
must show that the Hawaii Legislature's passing of the Act and
the Acts enforcement constitutes punishment.  There is "the
requirement that one who complains of being attainted must
establish that the legislature's action constituted punishment
and not merely the legitimate regulation of conduct." Nixon, 433
U.S. at 476 n. 40.

     Plaintiff has not been impermissibly punished by the
enactment and enforcement of HRS Chapter 134.  Traditional
punishments include "imprisonment," "banishment," "punitive
confiscation of property," and prohibition of "designated
individuals or groups from participation in specified employments
or vocations."  Nixon, 433 U.S. at 474.  The type of punishment
about which Plaintiff complains, a restriction on carrying
handguns, is not of the type "traditionally judged to be
prohibited by the Bill of Attainder Clause." Id. at 475.

     HRS Chapter 134 "reasonably can be said to further non-
punitive legislative purposes."  Id. at 475-76.  In light of the
Legislature's concern that weapons carried in the community
present an unreasonable danger of harm to human life, "legitimate
justifications for passage of the Act are readily apparent." Id.
at 476; cf. id. at 475-76 & n. 40 (the second test is a

36

"functional test of the existence of punishment" that is applied
by examining the purposes behind the challenged law).

Nothing in HRS Chapter 134 "evinces a[n] ... intent to
punish." Id. at 478.  There is no indication that the
Legislature's motivation was anything other than a legitimate
desire to protect the safety and welfare of the citizens of
Hawaii.

HRS Chapter 134 is not an impermissible bill of attainder
with respect to Plaintiff.  The Complaint fails to state a claim
for enforcement of an unconstitutional bill of attainder, and
dismissal of this claim, Count One of the Complaint, is
warranted.

### 6.   The Complaint Fails To State A Claim For Violation Of The Constitutional Prohibition Against The Impairment Of The Obligations Of Contract

In Count Two, the Complaint asserts a claim for violation of
Article I, Section 10 of the United States Constitution, alleging
that HRS Chapter 134 constitutes a law impermissibly impairing
the obligation of contract.

The contract clause of the federal Constitution, Article I,
§ 10, prohibits any state from passing a law "impairing the
obligations of contracts."  In asserting this claim, Plaintiff
bears the burden of alleging facts demonstrating that he
possesses contractual rights that have been substantially
impaired by HRS Chapter 134.  National Railroad Passenger Corp.
v. Atchison, Topeka & Santa Fe Railway Co., 470 U.S. 451 (1985).

37

Here, Plaintiff does not possess the fundamental individual right to carry a firearm.  See Hickman, 81 F.3d at 101-102; Silveira, 312 F.3d at 1066-1067.  HRS Chapter 134 imposes no impairment of a contractual right possessed by Plaintiff.  The dismissal of the claim for the violation of the Article I, Section 10 prohibition of the impairment of the obligations of contract, Count Two of Plaintiff's Complaint, is warranted.

The allegations of the Complaint fail in total to establish that the County Defendants have injured Plaintiff by acting to deprive him of his constitutional rights.  Monell v. New York City Dept. of Social Services, 436 U.S. 658, 662 (1978) ("the language of [42 U.S.C.] § 1983 . . . compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort" ).  The 42 U.S.C. § 1983 claims for civil rights violations are **DISMISSED**.

**E.    Plaintiff's §§ 1985 and 1986 Claims Are Precluded By Plaintiff's Failure To Allege A § 1983 Violation**

Plaintiff sues pursuant to §§ 1985 and 1986, as well as § 1983.  Under § 1985, claims may be brought for conspiracy to violate a citizen's § 1983 civil rights.

The conspiracy claim is based solely upon allegations which, as discussed above, were insufficient to state a claim for deprivation of a federal right under § 1983.  The insufficiency of the allegations to support a § 1983 deprivation of rights

precludes a § 1985 conspiracy claim predicated on the same allegations.  <u>Dooley v. Reiss</u>, 736 F.2d 1392, 1395 (9th Cir.), <u>cert. denied</u>, 469 U.S. 1038 (1984)(absence of section 1983 deprivation implies failure to state conspiracy claim); <u>Cassettari v. Nevada County, Cal.</u>, 824 F.2d 735, 739 (9th Cir. 1987).

Plaintiff alleges that Defendants violated 42 U.S.C. § 1986. As stated above, the Complaint fails to sufficiently allege a claim under 42 U.S.C. § 1985.  The insufficiency of the § 1985 cause of action precludes the cause of action brought pursuant to § 1986.  <u>White v. Pacific Media Group, Inc.</u>, 322 F.Supp.2d 1101, 1112 (D. Hawaii 2004).

Plaintiff's §§ 1985 and 1986 causes of action are **DISMISSED**.

//

//

//

//

//

//

//

//

//

//

//

//

39

## CONCLUSION

The Complaint fails to state a claim for deprivation of a federal right.  For the foregoing reasons,

Defendants' Motions to Dismiss, (Doc. 14 and 17), are **GRANTED**.  All federal constitutional claims against Defendants are **DISMISSED WITH PREJUDICE**.

The case is now closed.

IT IS SO ORDERED.

DATED: March 11, 2008, Honolulu, Hawaii.



   /s/ Helen Gillmor
_____

Chief United States District Judge


GEORGE K. YOUNG, JR. vs. STATE OF HAWAII and LINDA LINGLE in her capacity as Governor of the State of Hawaii; MARK J. BENNETT in his capacity as State Attorney General; COUNTY OF HAWAII, as a sub-agency of the State of Hawaii and HARRY KIM in his capacity as Mayor of the County of Hawaii; and the Hilo County Police Department, as a sub-agency of the County of Hawaii and LAWRENCE K. MAHUNA in his capacity as Chief of Police; et al., Civ. No. 07-00450 HG KSC; ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT